HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA MENTELE and KATHERINE MILLER,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR JAY INSLEE, KEVIN W. QUIGLEY, DAVID SCHUMACHER, and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 925.<br><br>Defendants. | CASE NO. C15-5134-RBL<br><br>ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTIONS AND DENYING PLAINTIFFS' CROSS MOTION<br><br>DKT. #s 65, 66, 68 |

THIS MATTER is before the Court on the Washington State Defendants' Motion for Summary Judgment and Dismissal [Dkt. #65], the Defendant Service Employees International Union's Partial Motion for Summary Judgment [Dkt. #66], and the Plaintiffs Mentele and Miller's Partial Cross-Motion for Summary Judgment [Dkt. #68]. This case considers the constitutionality of a Washington law authorizing a union (as exclusive representative) to bargain with the state about union and non-union state-subsidized child care providers' terms and conditions of employment. Non-union plaintiffs argue the Access to Quality Family Child Care Act compels them to associate with SEIU, violating their First Amendment associational and

ORDER - 1

speech rights. Defendants seek summary judgment, arguing the Access Act is constitutional under *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 104 S. Ct. 1058 (1984), because although it amplifies SEIU's voice at the bargaining table, it neither restrains Plaintiffs' right to speak nor requires them to join SEIU.

**DISCUSSION**

**A.     Background.**

Washington State subsidizes the cost of child care for approximately 7,000 eligible low-wage working families. *See* RCW 43.215.135. It unilaterally determined the subsidy amount, until it passed the Access Act. *See* RCW 74.04.050 (2004); *see also* RCW 41.56.028(1) (2016). The Act deems subsidized child care providers public employees solely for collective bargaining. *See* RCW 41.56.028(1). It authorizes them to elect an exclusive bargaining representative to negotiate with the state about their health and welfare benefits, professional development and training, grievance procedures, and the manner and rate of subsidy and reimbursements. *See* RCCW 41.56.028(2).

A majority elected SEIU, a union, as their exclusive representative. SEIU and the state entered into a collective bargaining agreement that required non-union members to pay a dues-equivalent fee supporting SEIU's administrative costs, such as the costs of bargaining. In 2014, the Supreme Court decided *Harris v. Quinn*, __ U.S. __, 134 S. Ct. 2618 (2014), which held that unions cannot collect dues-equivalent fees from non-union partial-state employees, and the State and SEIU immediately rescinded that requirement.

Miller and Mentele are licensed child care providers. Miller alleges she was a union member until November 2014, and SEIU claims it stopped collecting dues from her at that time.

ORDER - 2

1  Miller continues to care for children and to receive subsidies from the state; she is a "partial"-
2  state employee.

3  Mentele denies she was ever a union member, although SEIU alleges she was a member
4  until October 2014, and that it stopped collecting dues from her at that time. Mentele is no longer
5  a state-subsidized child care provider.

6  Miller and Mentele claim the Defendants violated their First Amendment rights by
7  authorizing SEIU to bargain on their behalf, even though they are not SEIU-members. They
8  argue this exclusive authority forces non-union state-subsidized child care providers to
9  unwillingly associate with the union's speech. Miller and Mentele ask the Court to declare the
10 Access Act and SEIU's collective bargaining agreements unconstitutional and to enjoin the State
11 and SEIU from bargaining. Mentele also claims *Harris* requires SEIU to refund any fees she paid
12 from March 2012 to October 2014.

13 The State Defendants seek summary judgment on both claims. They argue Mentele lacks
14 standing to challenge the constitutionality of the Access Act, because she is no longer a state-
15 subsidized child care provider. They argue the Access Act is constitutional under *Minnesota v.*
16 *Knight*—which upheld a statute requiring public employers to exchange views with only their
17 employees' exclusive representative—because it neither obligates child care providers to join or
18 financially support SEIU, nor restricts their speech or ability to join any group. The State
19 Defendants also argue that if Mentele seeks restitution for any fees collected pre-*Harris* from the
20 State, the Eleventh Amendment bars such a claim. SEIU joins the State Defendants' arguments,
21 but only moves for summary judgment on Miller and Mentele's first claim.

22 Mentele concedes she lacks standing to pursue a constitutional claim against the State
23 Defendants and SEIU. *See Dkt*. #68 at 22. Miller and Mentele both concede their request for
24

injunctive relief should be dismissed. *See id*. Those claims are DISMISSED with prejudice.[1]

Miller continues to allege that by authorizing SEIU exclusively to bargain with the state, the Access Act unconstitutionally associates her with SEIU, in which she declined membership.

She argues *Harris v. Quinn*, not *Minnesota v. Knight*, controls and indicates exclusive bargaining is only constitutional if the employees are "full-fledged"- state employees. She argues that because the government's interest in labor peace does not extend to partial-public employees, no compelling interest justifies SEIU's infringement—its authority to speak and contract on her behalf—on her First Amendment associational and speech rights.

**B.      Standard of Review.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing no evidence exists that supports an element

---

[1] To the extent Mentele argues the State owes her restitution, this claim too is DISMISSED with prejudice because the Eleventh Amendment prohibits actions for damages against the State. *See Romano v. Bible* 69 F.3d 1182, 1185 (9th Cir. 1999) (*citing Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995)); *see also Doe v. Lawrence Livermore Nat'l Laboratory*, 131 F.3d 836, 839 (9th Cir. 1977).

essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

**C.     Constitutionality of Exclusive Representation.**

Miller acknowledges exclusive representation is constitutional "in the full employment context," but argues it is unconstitutional for partial-public employees, such as state-subsidized child care providers. Her legal argument depends on three Supreme Court cases involving the intersection between labor laws and the First Amendment: *Abood*, *Knight*, and *Harris*.

In *Abood v. Detroit Board of Education*, the Supreme Court considered the constitutionality of a Michigan statute authorizing a union and a local government employer to agree to an "agency shop" arrangement requiring every employee, whether a union member or not, to pay the union a service fee. *See* 431 U.S. 209, 97 S. Ct. 1782 (1977). The Supreme Court distinguished between collecting mandatory fees from non-union members for a union's administrative, grievance, and bargaining expenditures and for its political or ideological expenditures, holding the former constitutional and the latter not. *See id.* at 232, 237.

In *Minnesota v. Knight*, the Court considered whether a Minnesota statute requiring public employers to "exchange views" only with their employees' exclusive representative impinged the employees' First Amendment associational rights. *See* 465 U.S. 271. It reasoned that although the restriction amplified the exclusive representative's voice above the employees', amplification is inherent in the government's freedom to choose its advisors and to ignore others. *See* 465 U.S. at 288. The Court also reasoned that the restriction did not infringe employees'

1  associational freedoms because they did not have to join the representative group. *See id*. It
2  therefore concluded Minnesota's restriction "in no way restrained appellees' freedom to speak on
3  any education-related issue or their freedom to associate or not to associate with whom they
4  please, including the exclusive representative." *Id*. at 288; *see also Knight v. Minnesota*
5  *Community College Faculty Assn.*, 460 U.S. 1048, 103 S. Ct. 1493 (1983) (summarily upholding
6  a similar provision).

7        In *Harris v. Quinn*, the Supreme Court refused to extend *Abood's* holding to partial-state
8  employees. *See* 134 S. Ct. 2618. It held that the First Amendment prohibits collecting a union-
9  activities fee from "those deemed public employees solely for the purpose of unionization who
10 do not want to join or to support the union." *See id*. at 2644. It reasoned that *Abood's*
11 justification for an agency fee—the fact that the State compelled the union not to discriminate
12 between its members and non-members in negotiating and administering a collective-bargaining
13 agreement, settling disputes, and processing grievances—did not apply to partial-state
14 employees, whose rates were set by law and whose grievances the union did not represent. *See*
15 *id*. at 2636–37.

16       Miller seizes upon *Harris*, asking the Court to conclude "*Harris*, not *Knight*, is
17 dispositive." She argues *Harris's* distinction between "full-fledged-" and "partial-"state
18 employees limits *Knight* as it did *Abood*. Her analogy is misplaced.

19       *Harris* addressed only whether a state could compel partial-public employees to
20 contribute to a union. It did not consider an exclusive bargaining agent's effect on employees'
21 First Amendment rights. It explained, "A union's status as exclusive bargaining agent and the
22 right to collect an agency fee from non-members are not inextricably linked. For example,
23 employees in some federal agencies may choose a union to serve as the exclusive bargaining
24

agent for the unit, but no employee is required to join the union or to pay any union fee." *See Harris*, 134 S. Ct. at 2640. *Harris*, which is merely tangential to the constitutionality of exclusive representation, does not supplant *Knight*.

Nor does it constrain *Knight's* applicability by creating a constitutional right for partial-state employees to compel an individual government audience. When deciding *Knight*, the Supreme Court mined for such a right. *See* 465 U.S. 271 at 1066. It announced that members of the general public do not have it. *See id*. Neither do public employees. *See id*. Neither do public employees working in academic institutions. *See id*. at 1065. So too, neither do state-subsidized child care providers. *See D'Agostino v. Baker*, 812 F.3d 240, 244 (1st Cir. 2016) (holding the Massachusetts law authorizing partial-state employee child care providers to elect an exclusive bargaining agent did not violate non-union members' associational or expressive rights because the *Harris* distinction did not limit *Knight*); *see also Jarvis v. Cuomo*, No. 5:14-CV-1459 LEK/TWD, 2015 WL 1968224, *7 (N.D. N.Y. Apr. 30, 2015); *Hill v. SEIU*, No. 15-cv-10175, 2016 U.S. Dist. LEXIS 62734, at *6 (N.D. Ill. May 12, 2016).

The Access Act neither restrains child care providers' right to speak nor requires them to join the democratically-elected representative group. *See Knight*, 465 U.S. at 288. It also does not impinge their right to be heard over another, because the Constitution affords no such right. *See Knight*, 465 U.S. 271 at 1065–66; *see also D'Agostino*, 812 F.3d at 244. Miller cannot demonstrate an infringement of any First Amendment right.

## CONCLUSION

As Justice Holmes suggested in *Bi-Mettalic Investment Co. v. State Board of Equalization*, persons should register their disagreement with public policy or disapproval of representatives' effectiveness principally at the polls. *See* 239 U.S. 441, 445, 36 S. Ct. 141

1  (1915). If Miller wants to silence SEIU's voice at the bargaining table, she can vote for a new

2  representative.

3       The Washington State Defendants' Motion for Summary Judgment and Dismissal [Dkt.

4  #65] is GRANTED. SEIU's Partial Motion for Summary Judgment [Dkt. #66] is GRANTED.

5  The Plaintiffs' Cross-Motion for Summary Judgment [Dkt. #68] is DENIED. Only Mentele's

6  claim for restitution against SEIU remains, as neither moved for summary judgment.

7       IT IS SO ORDERED.

8       Dated this 26th day of May, 2016.

Ronald B. Leighton
United States District Judge