**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| CYNTHIA MENTELE,<br>*Plaintiff*,<br><br>and<br><br>KATHERINE MILLER,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>JAY INSLEE, in His Official Capacity as Governor of the State of Washington; KEVIN W. QUIGLEY, in His Official Capacity as Director of the Washington State Office of Financial Management; DAVID SCHUMACHER, in His Official Capacity as Director of the Washington State Office of Financial Management; SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 925, a labor organization,<br>*Defendants-Appellees*. | No. 16-35939<br><br>D.C. No.<br>3:15-cv-05134-RBL<br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted December 3, 2018
Seattle, Washington

Filed February 26, 2019

Before: Susan P. Graber, M. Margaret McKeown,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Concurrence by Judge Graber

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's summary judgment for the State of Washington in an action brought pursuant to 42 U.S.C. § 1983 alleging that Washington's authorization for the Service Employees International Union Local 925 (SEIU) to act as the exclusive collective bargaining representative for Washington's publicly subsidized childcare providers violated plaintiff's First Amendment rights.

Plaintiff, a Washington State childcare provider, alleged that Washington's arrangement with SEIU violated her rights

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of free speech and association. Applying *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), the panel held that Washington's authorization of an exclusive bargaining representative did not infringe plaintiff's First Amendment rights. The panel further held that even assuming that *Knight* no longer governed the question presented in light of the Supreme Court's decision in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), the panel would still conclude that Washington's exclusive bargaining arrangement with SEIU was constitutionally permissible. The panel noted that the childcare providers were partial state employees for whom SEIU's scope of representation was relatively circumscribed and that the State's exclusive bargaining arrangement with SEIU served the compelling—and enduring—state interest of labor peace.

Concurring, Judge Graber wrote separately to state her view that, with respect to plaintiff's associational rights, she would follow the Eighth Circuit's analysis in *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018), and hold that there was no "meaningful distinction" between this case and the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271 (1984).

**COUNSEL**

Milton L. Chappell (argued), National Right to Work Legal Foundation, Inc., Springfield, Virginia; James G. Abernathy and David M.S. Dewhirst, Freedom Foundation, Olympia, Washington; for Plaintiff-Appellant.

Callie A. Castillo (argued), Deputy Solicitor General; Gina L. Comeau and Alicia O. Young, Assistant Attorneys General; Robert W. Ferguson, Attorney General; Attorney General's Office, Olympia, Washington; for Defendants-Appellees Jay Inslee, Kevin W. Quigley, and David Schumacher.

Scott A. Kronland (argued), Altshuler Berzon LLP, San Francisco, California; Schwerin Campbell Barnard and Robert H. Lavitt, Iglitzin & Lavitt LLP, Seattle, Washington; for Defendant-Appellee Service Employees International Union Local 925.

**OPINION**

CHRISTEN, Circuit Judge:

The State of Washington authorized the Service Employees International Union Local 925 (SEIU) to act as the exclusive collective bargaining representative for Washington's publicly subsidized childcare providers. Katherine Miller, a Washington childcare provider, challenges that arrangement as an infringement of her First Amendment rights of free speech and association. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's order granting summary judgment to SEIU and Washington State.

I.

Washington provides financial assistance to qualifying families for childcare costs. Under the terms of this program, families choose independent childcare providers and pay

them on a scale commensurate with the families' income levels. The State covers the remaining cost.

Before 2006, Washington unilaterally determined subsidy levels and other policies governing its childcare assistance programs, through legislation and regulations. But in 2006, Washington re-categorized the providers as "public employees" for purposes of the State's collective bargaining legislation and authorized the providers to elect an exclusive collective bargaining representative to negotiate with the State on their behalf. Wash. Rev. Code § 41.56.028. Because the childcare providers are state employees only for purposes of collective bargaining, they are considered "partial" state employees, rather than full-fledged state employees, and Washington law limits the scope of their collective bargaining agent's representation. For example, families continue to be the providers' primary employers, *id*. § 41.56.028(4)(a); the providers are not allowed to strike, *id*. § 41.56.028(2)(e); and the bargaining agent cannot negotiate about certain issues, *id*. § 41.56.028(2)(c) ("[r]etirement benefits shall not be subject to collective bargaining").

The childcare providers elected SEIU as their exclusive bargaining representative, and SEIU negotiated a number of terms and conditions for them as part of a state-wide collective bargaining agreement. Childcare providers are not required to join SEIU, but SEIU is nonetheless "required to represent[] all the public employees within the unit without regard to membership." *Id*. § 41.56.080. SEIU members pay union dues to support SEIU. Non-union members previously paid "agency fees" to support SEIU's collective bargaining efforts, but SEIU and the State eliminated the agency fees provision from their collective bargaining agreement after the Supreme Court's decision in *Harris v. Quinn*, 134 S. Ct. 2618

(2014) (holding that states may not compel partial state employees to pay agency fees for union representation).[1]

Katherine Miller and Cynthia Mentele, two Washington state childcare providers, filed suit in March of 2015 against State officials and SEIU. Miller is a former SEIU member; the record is unclear about whether Mentele was a member. Both plaintiffs alleged that their First Amendment right to expressive association was violated when Washington recognized SEIU as the exclusive bargaining representative for all childcare providers because SEIU necessarily spoke and negotiated on their behalf. Miller and Mentele sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. The complaint did not clearly define the nature of the relief Miller and Mentele sought, but the briefing filed with our court clarified that they sought neither the opportunity to negotiate with the union themselves nor the complete elimination of a collective bargaining representative.

The parties filed cross-motions for summary judgment. The district court granted the motion filed by the State and SEIU, while denying the motion filed by Miller and Mentele. The parties stipulated to the dismissal of Mentele's additional claim that sought reimbursement of past union dues.

Miller alone appeals the district court's judgment. We review de novo the district court's order granting summary judgment. *Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1082 (9th Cir. 1999).

---

[1] Agency fees are reduced union dues paid by non-union member employees to support the union's collective bargaining efforts. *See, e.g., Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2460–61 (2018).

II.

A.

Our analysis relies largely on two Supreme Court cases that discuss the propriety of exclusive bargaining representation for public employees: the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984); and its recent decision in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). Two other cases provide important context for our decision: *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and *Harris*, 134 S. Ct. 2618. SEIU and the State argue that *Knight* controls the outcome of this appeal; Miller argues that we are bound by *Janus*.

*Knight* involved a challenge by community college professors to two statutory provisions under Minnesota law: (1) a "meet and negotiate" provision, which required the State to meet and negotiate with the faculty's exclusive bargaining representative (e.g., the faculty's union) concerning the terms and conditions of employment; and (2) a "meet and confer" provision, which required the State to meet and confer with the exclusive representative regarding "policy questions relating to employment but outside the scope of mandatory bargaining." *Knight*, 465 U.S. at 273–75, 279. The Court summarily affirmed the "meet and negotiate" requirement, *id*. at 279, and separately concluded that the exclusion of non-union members from the State's "meet and confer" provision did not infringe the non-union members' First Amendment rights:

> Appellees' speech and associational rights, however, have not been infringed by Minnesota's restriction of participation in "meet and confer" sessions to the faculty's exclusive representative. The state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative.

*Id*. at 288. The Court explained that the non-union members had not been denied access to a public forum, *id.* at 280–83, that state employees had no right to be heard by, or negotiate individually with, a public body, *id*. at 283–85, and that the non-union members were free to form advocacy groups or otherwise make their views known to the State and associate with whomever they wished to associate, *id.* at 288–90. The Court concluded that the non-union members' rights to free speech and association were not abridged by the meet and confer provision.

Significant for the present appeal, *Knight* was decided a few years after the Court's decision in *Abood v. Detroit Board of Education*. In *Abood*, the Court concluded that, although compulsory agency fees impinge employees' First Amendment rights to some extent, the mandatory fees were nevertheless justified by the State's compelling interest in "labor peace"; i.e., the logistical and managerial benefits that accrue when an employer negotiates only with one exclusive representative. 431 U.S. at 232–37. Though it followed *Abood* by a few years, *Knight* never mentioned labor peace and instead upheld Minnesota's meet and confer provision by concluding that it did not infringe the non-union members'

First Amendment associational rights at all. In this way, *Knight* expressly cabined *Abood*, explaining that the First Amendment infringement in *Abood* was the result of the "compulsory *collection of dues*" from non-union members, and observing that *Abood* did not address whether exclusive representation infringed the non-union members' associational rights. *See Knight*, 465 U.S. at 291 n.13 (emphasis added).

Following *Knight*, every circuit court to address the constitutionality of exclusive bargaining arrangements (as distinct from the constitutionality of compelling financial support for such bargaining arrangements) has concluded that these provisions do not violate the First Amendment. *D'Agostino v. Baker*, 812 F.3d 240, 242–44 (1st Cir. 2016) (Souter, J., by designation); *Hill v. Serv. Emps. Int'l Union*, 850 F.3d 861, 864–65 (7th Cir.), *cert. denied*, 138 S. Ct. 446 (2017); *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018), *petition for cert. filed*, ___U.S.L.W. ___ (U.S. Dec. 13, 2018) (No. 18-766); *Jarvis v. Cuomo*, 660 F. App'x 72, 74–75 (2d Cir. 2016) (order) (unpublished).

In 2014, thirty years after it decided *Knight*, the Court addressed the constitutionality of compelling agency fees from non-union members who are partial state employees like the childcare providers here. *Harris*, 134 S. Ct. 2618. *Harris* acknowledged *Abood*'s "labor peace" justification for compelling agency fees to support exclusive bargaining representation, but it did not extend *Abood*'s rationale to union representation of partial state employees. *Id*. at 2640. In fact, contrary to *Abood*'s rationale, in *Harris* the Court decided that compelled fees are not necessary to ensure labor peace because public sector unions can effectively operate with the support of the dues paid by union members alone.

*Id*. at 2640–41. In any event, *Harris* reasoned, there are minimal labor peace benefits to be gained when partial employees are represented because the scope of their unions' representation is limited. *Id*. at 2640.

The Court decided *Janus* in 2018. *Janus* alluded to the propriety of exclusive representation arrangements, but it primarily considered the constitutionality of compelling full-fledged, non-union member state employees to pay agency fees. 138 S. Ct. at 2459–60. *Janus* reaffirmed that labor peace is a compelling state interest, but it overruled *Abood*'s holding that labor peace justifies requiring non-union members to pay agency fees. *Id*. at 2465–66. *Janus* then went on to observe:

> It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views.

*Id*. at 2478. In this passage, *Janus* suggested that exclusive bargaining representation does significantly impinge on associational freedoms, but in the same breath the Court stated that this degree of impingement is justified or "tolerated" in the context of collective bargaining agents. *Id*. *Janus* explained that "States can keep their labor-relation *systems* exactly as they are"; they just "cannot force nonmembers to subsidize public-sector unions," *id*. at 2485 n.27 (emphasis added). Also in *Janus*, the Supreme Court

expressly distinguished between compelling non-union members to pay agency fees (constitutionally impermissible) and mandating that any union representation be exclusive, which the Court suggested is a tolerated impingement of non-union members' First Amendment rights.

Miller contends that we are bound by *Janus*'s observation that exclusive union representation of non-union members impinges First Amendment rights. Appellees contend that *Knight* controls because *Janus*'s reference to exclusive representation is dictum unnecessary to *Janus*'s primary holding.

B.

We conclude that the Supreme Court's holding in *Knight* is the most appropriate guide. The salient rationale from *Knight* merits repeating:

> [T]he First Amendment guarantees the right both to speak and to associate. Appellees' speech and associational rights, however, have not been infringed by Minnesota's restriction of participation in "meet and confer" sessions to the faculty's exclusive representative. The state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative. . . .
>
> . . . .

> . . . [A]ppellees' associational freedom has not been impaired. Appellees are free to form whatever advocacy groups they like. They are not required to become members of [the union], and they do not challenge the monetary contribution they are required to make to support [the union's] representation activities.

*Knight*, 465 U.S. at 288–89. The Court further summarized in a footnote that the appellees' "speech and associational freedom have been *wholly unimpaired*" by the meet and confer provision. *Id.* at 290 n.12 (emphasis added). Given the importance of that analysis to the Court's opinion, we do not view those statements as dictum.

Miller insists that *Knight* is not precisely on point. We acknowledge that *Knight*'s recognition that a state cannot be forced to negotiate or meet with individual employees[2] is arguably distinct from Miller's contention that employees' associational rights are implicated when a state recognizes an exclusive bargaining representative with which non-union employees disagree. For Miller, the fact that she is free to communicate her opinions or associate with whomever she chooses does not alleviate her concern that a union she dislikes is speaking for her. Miller is not complaining about an inability to speak herself; she just wants to be "left alone to make her own decisions regarding associations and her speech."

---

[2] *See* 465 U.S. at 283–84 (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915)).

Despite these differences, *Knight* is a closer fit than *Janus*. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) (explaining "the Court of Appeals should follow" the precedent that has "direct application"). *Knight* addressed the First Amendment rights of non-union members who were excluded from union meetings with the State, and Miller claims that her First Amendment rights are infringed when SEIU purports to speak on her behalf even though she abhors the union. *Knight* acknowledged that exclusive bargaining required the State to treat the union representatives as expressing "the faculty's official collective position" *even though* "not every instructor agrees with the official faculty view on every policy question." 465 U.S. at 276. In this way, *Knight* addresses Miller's objection because Minnesota's exclusion of non-union faculty members from meet and confer sessions necessarily meant that union representatives expressed the faculty's "official collective position" on behalf of even dissenting non-union members. *Knight* expressly concluded that such a system "in no way restrained appellees' . . . freedom to associate *or not to associate with whom they please, including the exclusive representative*," *id*. at 288 (emphasis added), and it approved the requirement that bound non-union dissenters to exclusive union representation.

Miller argues that *Janus* overruled *Knight* and that *Janus* controls the outcome of this case, but we are not persuaded. The cases presented different questions, as we have explained, and *Janus* never mentions *Knight*. To accept Miller's argument, we would have to conclude that the brief passage Miller relies upon (two sentences at most), which addresses a question that was not presented or argued and which was unnecessary to the Court's holding, was nevertheless intended to overrule the Court's earlier decision

in *Knight sub-silentio*. *See Bierman*, 900 F.3d at 574 (concluding that *Janus* did not overrule *Knight*). We are unwilling to make that leap. The same passage Miller identifies as evidence that *Knight* did not survive *Janus* goes on to expressly affirm the propriety of mandatory union representation, which is consistent with *Knight*. *Janus* is also clear that the degree of First Amendment infringement inherent in mandatory union representation is tolerated in the context of public sector labor schemes. 138 S. Ct. at 2478 ("We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views."). *Janus*'s reference to infringement caused by exclusive union representation, even in the context of its broader discussion of *Abood* and the Court's long history of relying on labor peace to justify certain provisions in collective bargaining agreements, is not an indication that the Court intended to revise the analytical underpinnings of *Knight* or otherwise reset the longstanding rules governing the permissibility of mandatory exclusive representation. The Supreme Court has directed that we should "leav[e] to [the Supreme] Court the prerogative of overruling its own decisions," and follow "direct[ly] applica[ble]" precedent, even if subsequent decisions call into question some of that precedent's rationale. *Agostini*, 521 U.S. at 237; *see Bierman*, 900 F.3d at 574. Consistent with that directive, we apply *Knight*'s more directly applicable precedent, rather than relying on the passage Miller cites from *Janus*, and hold that Washington's authorization of an exclusive bargaining representative does not infringe Miller's First Amendment rights.

The Eighth Circuit reached the same conclusion, for essentially the same reasons, in *Bierman*, the only circuit-court decision to have addressed this issue after the Supreme Court decided *Janus*. *Bierman* concerned Minnesota's law authorizing in-home care providers to elect an exclusive representative to negotiate employment terms with the State. 900 F.3d at 572. A group of providers challenged the law, arguing that it "unconstitutionally compels them to associate with the exclusive negotiating representative." *Id.* The Eighth Circuit concluded that *Janus* did not affect this analysis, followed the reasoning in *Knight*, and rejected the providers' argument. *Id.* at 574; *accord Reisman v. Associated Faculties of Univ. of Me.*, No. 1:18-cv-00307-JDL, 2018 WL 6312996, at *2–5 (D. Me. Dec. 3, 2018) (order); *Uradnik v. Inter Faculty Org.*, Civ. No. 18-1895 (PAM/LIB), 2018 WL 4654751, at *2 (D. Minn. Sept. 27, 2018) (unpublished).

C.

Even if we assume that *Knight* no longer governs the question presented by Miller's appeal, we would reach the same result: SEIU's authorized position as the childcare providers' exclusive representative is constitutionally permissible.

At least in the context of organized labor, the impingement of First Amendment rights must, at a minimum, satisfy "exacting scrutiny"; i.e., it must "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465. (quoting *Knox v. Serv. Emps. Int'l*

*Union, Local 1000*, 567 U.S. 298, 310 (2012)).³ "Exacting scrutiny encompasses a balancing test. In order for a government action to survive exacting scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015) (internal quotation marks omitted). We therefore begin by assessing the seriousness of the burden on Miller's associational rights.

The childcare providers here are partial state employees for whom SEIU's scope of representation is relatively circumscribed. *See* Wash. Rev. Code § 41.56.028 (describing limitations of representative's bargaining power). The providers are not allowed to strike, SEIU cannot negotiate their retirement benefits, families retain the right to choose and terminate any provider, and the legislature retains the unilateral right to adopt personnel requirements and to make programmatic modifications. *See id*. § 41.56.028(2)(c), (2)(e) & (4)(a); *see also Harris*, 134 S. Ct. at 2634–37 (describing similarly limited scope of the union's bargaining authority). Because of SEIU's limited role in representing partial

---

³ The Court in *Janus* applied "exacting scrutiny" to the question whether compelling agency fees from non-union members is permissible, as it had done in *Harris* and in *Knox*. 138 S. Ct. at 2465. But the Court noted that strict scrutiny may be more appropriate due to the First Amendment rights at stake. *Id*. The Court did not need to resolve that question in *Janus* because the statute at issue failed even exacting scrutiny, *id*., but we note that the Court previously applied exacting scrutiny to challenges of free association rights. *See*, *e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). If we concluded that Miller's First Amendment rights were infringed by SEIU's representation, we would be obliged to apply "exacting scrutiny" to decide whether the infringement is constitutionally permissible, because this was the test the Court applied in *Roberts*, *Knox*, *Harris*, and *Janus*. *See Agostini*, 521 U.S. at 237.

employees, any impingement of the employees' speech and associational freedoms is correspondingly reduced.

Against that backdrop, we conclude that the State's exclusive bargaining arrangement with SEIU serves the compelling—and enduring—state interest of labor peace. *Janus* did not revisit the longstanding conclusion that labor peace is "a compelling state interest," 138 S. Ct. at 2465, and the Court has long recognized that exclusive representation is necessary to facilitate labor peace; without it, employers might face "inter-union rivalries" fostering "dissension within the work force," "conflicting demands from different unions," and confusion from multiple agreements or employment conditions, *id*. (quoting *Abood*, 431 U.S. at 220–21). For the following reasons, Washington's continued compelling interest in labor peace justifies the minimal infringement associated with SEIU's exclusive representation. *Accord Uradnik*, 2018 WL 4654751, at *3.

First, Washington has an interest in negotiating with only one entity, at least for the sake of efficiency and managerial logistics, and that interest persists even if, per *Harris*, Washington's interest in the payment of fees to support the union dwindles with the reduced union representation. Washington's scheme calls for the negotiation of comparatively few conditions, but it does not *eliminate* the State's interest in avoiding the competing demands of rival representatives, the potential confusion that would result from multiple agreements, and possible dissension among the providers. *See Janus*, 138 S. Ct. at 2465–66.

Second, *Janus* specifically acknowledged that exclusive representation is constitutionally permissible. *Id.* at 2478. The Court reaffirmed that "[s]tates can keep their labor-relation systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." *Id.* at 2485 n.27. This statement is consistent with *Harris*, which concluded that compulsory agency fees are not justified for public sector unions representing partial employees, in part because of the union's limited scope of representation, *see* 134 S. Ct. at 2640; and it follows from *Janus*'s own statement that exclusive bargaining systems are acceptable for public employees, even though compulsory agency fees are not, 138 S. Ct. at 2478. These cases establish a bright line distinction between allowing exclusive representation and mandating the payment of agency fees.

Finally, applying an exacting standard, we know of no alternative that is "significantly less restrictive of associational freedoms." *Id*. at 2465. Because SEIU's limited representation already reduces the level of any infringement, it is difficult to imagine an alternative that is "*significantly* less restrictive" than the one Washington employs. *Id*. (emphasis added). Miller has not suggested an alternative way for the State to solicit meaningful input from childcare providers while simultaneously avoiding the chaos and inefficiency of having multiple bargaining representatives or negotiating with individual providers. *See* Wash. Rev. Code § 41.56.010 (declaration of purpose). Miller wants to be left alone, but it is unclear what sort of system Washington would or could implement to satisfy this demand, apart from unilaterally deciding the terms of employment for partial employees.

Even assuming that *Knight* no longer governs the question presented, we would still conclude that Washington's exclusive bargaining arrangement with SEIU is constitutionally permissible.

**AFFIRMED.**

---

GRABER, Circuit Judge, concurring:

I concur in full in the opinion. I write separately only to state my view that the conclusion we reach in Part II-B is less tenuous than the opinion makes it sound. I agree entirely with the Eighth Circuit's reasoning in *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018), a case similar to ours. I would follow the Eighth Circuit's analysis and hold that, with respect to Plaintiffs' associational rights, there is no "meaningful distinction" between this case and the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). *Bierman*, 900 F.3d at 574. Accordingly, we are bound by *Knight*. *Agostini v. Felton*, 521 U.S. 203, 237 (1997).